IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANK BANDAS, | ) |
| Plaintiff, | ) |
| v. | ) 17 C 1323 |
| UNITED RECOVERY SERVICE, L.L.C., | ) Judge Virginia M. Kendall |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

After receiving a collection letter pertaining to a debt he owed of $94.00 for medical services, Plaintiff Frank Bandas's filed his Complaint under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (FDCPA) and the Illinois Collection Agency Act, 225 ILCS 425, *et seq.* (ICAA), against Defendant, United Recovery Service, LLC (URS). (Dkt. 1.) Defendant filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim. [13]. The Motion is denied in part and granted in part. Because Plaintiff has sufficiently alleged that the collection letter potentially misleads an unsophisticated consumer, the Motion is denied with respect to the FDCPA claims. However, Plaintiff fails to allege actual damages, and therefore the Motion is granted with respect to the ICAA claim and that claim is dismissed.

## BACKGROUND

The Court takes the following allegations from Plaintiff's Complaint and treats them as true for the purposes of a motion to dismiss. *See Bell Atlantic, Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Plaintiff filed his Complaint under the FDCPA and ICAA. Plaintiff incurred a debt for $94 in medical services but due to his financial circumstances, he was unable to pay and the debt went into default. (*Id.* ¶¶ 11, 12; Dkt. 1–1, Exhibit C.) Advocate Medical subsequently

assigned the debt to URS.  (*Id.* ¶ 13; Dkt. 1–1, Exhibit C.)  According to the Complaint, "URS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others."  (*Id.* ¶ 8.)  On or about April 20, 2016, URS sent a letter regarding the debt:

> "Please receive and accept this letter in the spirit in which it is intended.  We do not seek to create a climate of argument and threat but merely to state our position in as factual a manner as possible.  Our client claims a debt is due and owing from you; they have attempted to resolve this between them and you with no success.  Our office has been brought into the picture and we have done everything we can think of to convince you to pay this claim; our file indicates that you have the means to pay but that you will not pay.
> We wish to make this appeal to you as one reasonable party to another.  Send us your full payment today or contact this office at once to make suitable payment arrangements so that no further procedures need to be taken in this matter.
> **This is our third attempt to have you voluntarily resolve this claim.  We seek your cooperation now!**
> Please contact our office if you have any questions about this claim or to make suitable arrangement for payment(s). …
> **THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE!**"

(Dkt. 1, Ex. C).  Plaintiff alleges that the "only legal alternative to having Plaintiff voluntarily pay the debt is to sue Plaintiff for payment."  (Dkt. 1 ¶ 20.)  Therefore, he believed that URS was threatening a lawsuit against him.  (*Id.* ¶ 21.)  Plaintiff also alleges that "URS and its client, Advocate Medical, do not sue consumers in Cook County for past due debts."  (*Id.* ¶ 22.)  Nevertheless, Bandas alleges, URS made this "false threat in an attempt to coerce Plaintiff into paying[.]"  (*Id.* ¶ 24.)  Plaintiff "became afraid and felt anxiety at the prospect of being sued."  (*Id.* ¶ 26.)

## LEGAL STANDARD

To survive a 12(b)(6) challenge, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint contains a claim that is plausible on its face if it supports a reasonable inference that the defendant is liable for the harm. *Id.* This Court dismisses claims only if the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations. *See Visiting Nurses Ass'n of Southwestern Ind., Inc. v. Shalala*, 213 F.3d 352, 354 (7th Cir. 2000). The Court relies on its "judicial experience and common sense" in making an assessment of the plausibility of the claims. *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679). For purposes of this motion, this Court draws all reasonable inferences in Plaintiffs' favor. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

## DISCUSSION

A. FDCPA

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Plaintiff further alleges that Defendant violated two separate provisions of the FDCPA: Section 1692e(5) and Section 1692e(10). Section 1692e(5) prohibits a debt collector from making a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5); *see also McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014). Section 1692e(10) prohibits debt collectors from using any "false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

In evaluating claims under either section of the FDCPA, a court must apply the objective, "unsophisticated consumer" standard. *Gruber v. Creditors' Protection Service, Inc.*, 742 F.3d

3

271, 273 (7th Cir. 2014). This hypothetical individual is "uninformed, naïve, or trusting" but also possesses "rudimentary knowledge about the financial world, [and is] wise enough to read collection notices with added care, [possesses] 'reasonable intelligence' and is capable of making basic logical deductions and inferences." *Id.* at 273–274.

Generally, whether a collection notice is misleading is an issue of fact for a jury, but "a plaintiff fails to state a claim and dismissal is appropriate as a matter of law when it is 'apparent from a reading of the letter that not even a significant fraction of the population would be misled by it.'" *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012) (citing *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574 (7th Cir. 2004)). Because there has been no opportunity for the presentment of extrinsic evidence of confusion here, such as consumer surveys, Defendant's motion can be granted only if "the allegedly offensive language is plainly and clearly not misleading." *Cf. Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012).

Plaintiff alleges that the following language in the collection letter violated the FDCPA:

> We wish to make this appeal to you as one reasonable party to another. Send us your full payment today or contact this office at once to make suitable payment arrangements so that no further procedures need to be taken in this matter.

(Dkt. 1, Ex. C). Plaintiff concludes that "[t]he only legal alternative to having Plaintiff voluntarily pay the debt is to sue Plaintiff for payment," and that therefore Plaintiff believed litigation was imminent. (Dkt. 1 ¶ 20.) Plaintiff further alleges that "URS and its client, Advocate Medical, do not sue consumers in Cook County for past due debts." (*Id.* ¶ 22.) Therefore, "URS' threat was false, as it and its client did not intend to take legal action against Plaintiff." (*Id.* ¶ 23.)

Defendant argues that an unsophisticated consumer would not find this language to constitute a threat of litigation because the letter made clear that no decision regarding legal

4

action had been made nor was imminent. (Dkt. 14.) Defendant primarily relies on three cases for the argument that the instant letter was not threatening litigation in violation of 1692e(5) nor 1692e(10). *See Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1136 (N.D. Ill. 1998)[1]; *see also Aker v. Bureaus Inv. Grp. Portfolio*, *LLC, et al.*, No. 12 C 3633, 2014 WL 4815366 (N.D. Ill. Sept. 29, 2014); *see also Ruiz v. Midland Credit Management*, No. 11 C 32, 2012 WL 33016 (N.D. Ind. Jan. 6, 2012). In these three cases, the dunning letters contained express promises to continue collection efforts and a statement concerning *possible* litigation. For example, in *Jenkins*, the dunning letter stated that "[t]he economic feasibility of some type of litigation by our client has not been determined[.]" *Id.* at 1136; *see also Aker*, 2014 WL 4815366 at *6; *see also Ruiz*, 2012 WL 33016 at *3. Determining that there was no threat in stating that there was a mere possibility of litigation, the district courts in these three cases never moved on to the next portion of the analysis: whether the threats were false. *See McMahon*, 744 F.3d at 1020.

An unsophisticated consumer may read the instant dunning letter as threatening litigation. The letter states that collection efforts have been exhausted, "we have done everything we can think of[.]" (Dkt. 1, Ex. C). And the letter directs Plaintiff to contact the office "today" in order to avoid "further procedures" and that "[t]his is our third attempt to have you voluntarily resolve this claim. We seek your cooperation now!" (*Id.*). Taken together, an unsophisticated consumer may find this letter threatens litigation based on the urgent tone, (including the phrases "today" and "now!"), and based on the implication that all other avenues of collection have already been exhausted. This distinguishes the letter from *Jenkins* where the collector stated that the feasibility of litigation had not yet been determined. 999 F. Supp. at 1136. Not only does

---

[1] Defendants in their Reply scold Plaintiffs for "ignor[ing] *Jenkins* and its progeny[.]" (Dkt. 20 at 1.) But *Jenkins* is not precedential and was further distinguishable in that the court was reviewing a motion for summary judgment. Defendants fail to respond to the arguments made in the Seventh Circuit cases cited to, including *McMahon* and *Pantoja*. *See McMahon v. LVNV Funding, LLC*, 744 at 1021; *Pantoja*, 2017 WL 1160902.

Plaintiff allege that he was threatened with litigation but his allegations also satisfy the next portion of the analysis: it is not actually in URS's practices to sue for collection and therefore this threat was false and misleading. *See McMahon*, 744 F.3d at 1020.

Even without an express threat of litigation, collection efforts offer opportunities for mischief and deception. *See Pantoja v. Portfolio Recovery Assocs., LLC*, No. 15-1567, 2017 WL 1160902, at *6 (7th Cir. Mar. 29, 2017). For example, in *Cuenca v. Harris & Harris, Ltd.*, the collector sent a letter to plaintiff that stated, in part: "[i]f this debt is not paid, our client(s) may exercise their various options to enforce collection. At this point, the choice is still yours ... please respond accordingly." No. 16 C 5385, 2017 WL 1196922, *1 (N.D. Ill. Mar. 31, 2017). The court in *Cuenca* held that a statement that a creditor will consider exercising its enforcement options regarding a debt could easily be understood by an unsophisticated consumer as a statement that litigation would be considered. *Id.* at *2. Furthermore, if the collector has no intention of actually pursuing litigation, the statement violates the FDCPA. *Id.* at *3. *Pantoja* held that "carefully crafted language" which is "chosen to obscure" a debt collector's rights is "the sort of misleading tactic the FDCPA prohibits." 2017 WL 1160902 at *6. The court relied on *Pantoja* in finding a violation had occurred. In *Pantoja*, the dunning letter specifically stated the debt collector would not sue the debtor, but used vague language that implied the collector had chosen not to sue when in reality the collector was time-barred from doing so. *Id.* at *6. In *Cuenca*, the case was even "more clear-cut than *Pantoja*, because the "threat of potential litigation hangs in the air without any representation it will not be used." 2017 WL 1196922 at *3. Because the debt collector in *Cuenca* had no intention of actually litigating, the district court held that the plaintiff had stated a plausible claim under 1692e. *Id.* Similarly here, the threat of "further proceedings" hangs in the air with no representation that it will not be used.

Defendant argues that *Cuenca* is not similar to the instant case because the dunning letter stated that the debt collector "may exercise their various options to enforce collection," and URS's letter does not contain such language of "enforcement." (Dkt. 20 at 4.) However, the threat of "further proceedings" is analogous to the threat of enforcement. Black's Law Dictionary defines "enforcement" as "[t]he act or process of compelling compliance with a law, mandate, command, decree, or agreement." BLACK'S LAW DICTIONARY (9th ed. 2009). Black's defines "proceedings" as "1. A specific method or course of action. 2. The judicial rule or manner for carrying on a civil lawsuit or criminal prosecution." *Id.* Based on that definition, a promise of further "proceedings" if the Plaintiff does not pay indicates carrying on a civil lawsuit. And, a promise of enforcement indicates compelling compliance with the law which may occur through a lawsuit. Defendant attempts to distinguish *Cuenca* because of the word "enforcement," therefore, is unpersuasive.

Taken as a whole, an unsophisticated consumer could reasonably believe that "further proceedings" in URS's letter constituted a threat of litigation and Plaintiff has alleged that Defendant does not, as a practice, pursue litigation. (Dkt. 1 ¶ 22.) Thus, an unsophisticated consumer may believe an action could be taken against them that the Defendant does not actually intend to take, making the "further proceedings" implication false and misleading. Based on these allegations, Plaintiff has stated a plausible claim under 1692e(5) and 1692e(10).

B. ICAA

Section 425/9(a)(24) of the ICAA prohibits debt collectors from "[a]ttempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist." 225 ILCS 425/9(a)(24). Here, Plaintiff alleges that URS violated Section 425/9(a)(24) "when it threatened a lawsuit on behalf of a client that does not file lawsuits

7

against consumers in Cook County." (Dkt. 1 ¶ 31.) Defendant argues that the URS letter never threatened a lawsuit and that Plaintiff has failed to plead actual damages as required to proceed with an ICAA claim. *See, e.g., McCabe v. Crawford & Company,* 272 F. Supp. 2d 736, 751–52 (N.D. Ill. 2003).

Plaintiff states his damages are adequate and cites to *Thomas v. Arrow Financial Services*, *LLC*, in which a district court held that the plaintiff's allegations of humiliation and embarrassment constituted a compensable injury. No. 05 C 5699, 2006 WL 2438346, at *3 (N.D. Ill. Aug. 17, 2006) (citing *Greisz v. Household Bank*, 8 F.Supp.2d 1031, 1043 (N.D.Ill.1998) (stating actual damages under ICFA include compensation for mental suffering)). But in *Thomas,* the letter at issue was sent to a debtor's employer, a third party, and allegations of "humiliation" and "embarrassment." *Id.* Here, there are no such allegations of humiliation vis-à-vis a third party. Similarly, in *Kim v. Riscuity, Inc.*, also cited by Plaintiff, the plaintiff "sufficiently allege[d] that he has suffered actual damage by having his credit score damaged by [defendant's] actions." *Kim v. Riscuity, Inc.*, No. 06 C 1585, 2006 WL 2192121, at *2 (N.D. Ill. July 31, 2006). But *Kim* had nothing to do with emotional damages and Plaintiff here does not allege any facts showing he has been damaged in a way similar to the damaged credit score alleged in *Kim*.

Defendant argues that the allegation of anxiety is insufficient because "[e]motional distress constitutes legally cognizable damage only where the distress is particularly severe." (Dkt. 14 at 9) (citing *Doe v. Northwestern University,* 289 Ill. App. 3d 39, 45 (1st Dist. 1997)). The Court agrees. Plaintiff received a single collection letter for $94 and his resulting "anxiety" from the letter is insufficient to plead damages under the ICAA and therefore the claim is dismissed.

C. Supplemental Briefing

After the parties completed briefing the Motion to Dismiss, the Supreme Court handed down *Henson v. Santander Consumer USA, Inc.*, 137 S. Ct. 1718 (2017). The issue squarely before the Court was as follows: "[H]ow to classify individuals and entities who regularly purchase debts originated by someone else and then seek to collect those debts for their own account." *Id.* at 1721. The Supreme Court held that "[a]ll that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another.'" *Id.*; *see also id.* at 1724 ("After all and again, under the [FDCPA's] definition at issue before us you have to attempt to collect debts owed another before you can ever qualify as a debt collector."). Accordingly, "a company collecting purchased defaulted debt for its own account" is not a debt collector. *Id.* The Court ordered the parties to submit supplemental briefing on whether *Henson* applies to this matter. (Dkt. 23.) In determining whether one is a debt collector, the *Henson* Court held that one must not only regularly collect debts, but must be acting in the capacity of a debt collector with respect to that particular debt. *Id.*

URS argues that *Henson* provides an additional basis for the Court to dismiss the FDCPA claims. Although the Complaint alleges URS is a "debt collector" and "regularly collects or attempts to collect" and the defaulted consumer debt "owed to others" (Compl., ¶¶ 8-10), the Complaint also alleges URS was **assigned** the debt. (*See* Compl at ¶14) (emphasis added). Based solely on those allegations of an assignment, it seems possible that URS is collecting its own debt for its own account rather than acting as a third-party debt collection agent seeking to collect a debt owed to another. However, the assignment allegation on its own will not suffice. There is not enough on the record to determine who owns the debt. In Plaintiff's supplemental briefing, he asserts that URS was not a debt buyer and that in a letter sent to Plaintiff regarding

9

the debt, URR stated that "Plaintiff owes [the debt] to Advocate Medical Group."  (Dkt. 14 at 1.) Therefore, whether URS is a debt collector is a question appropriately answered based on discovery and not at the initial pleading stage.

## **CONCLUSION**

For those reasons, Defendant's Motion to Dismiss the FDCPA claims is denied and the Motion to Dismiss the ICAA claim is granted.

_____
Hon, Virginia M. Kendall
United States District Judge

Date:  November 8, 2017