IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | ) | |
|---|---|---|
| FRANK BANDAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 17 C 01323 |
| | ) | |
| UNITED RECOVERY SERVICE, LLC, | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Frank Bandas filed suit against United Recovery Service, LLC ("URS") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Illinois Collection Agency Act ("ICAA"), 225 ILCS 425/1 *et seq.* (Dkt. 1). On November 8, 2017, this Court dismissed Plaintiff's ICAA claim. (Dkt. 33). The parties filed Cross-Motions for Summary Judgment on Plaintiff's remaining FDCPA claim. (Dkts. 47, 50). For the following reasons, the Court denies Plaintiff's Motion for Summary Judgment (Dkt. 47) and grants Defendant's Motion for Summary Judgment (Dkt. 50).

## STATEMENT OF FACTS

The Court takes the relevant facts from the parties' Local Rule ("LR") 56.1 statements of undisputed material facts and supporting exhibits: Local Rule 56.1 Statement of Uncontested Material Facts in Support of Plaintiff's Motion for Summary Judgment (Dkt. 49), Defendant's Response to Plaintiff's Rule 56.1 Statement (Dkt. 55), Defendant's Rule 56.1 Statement of Uncontested Facts in Support of Motion for Summary Judgment (Dkt. 52), Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Facts in Support of Defendant's Motion for Summary Judgment (Dkt. 57), Plaintiff's L.R. 56.1(b)(3)(c) Statements of Additional Facts in Opposition to

1

Defendant's Motion for Summary Judgment (*id.*), and Defendant's Response to Plaintiff's Rule 56.1 Statement of Additional Facts in Opposition to Summary Judgment. (Dkt. 60). The following facts are supported by the record and, except where otherwise noted, are undisputed.

Plaintiff incurred a $94 debt to Advocate Medical Center for medical services. (Dkt. 49 at ¶ 6; Dkt. 57 at ¶ 7). After Plaintiff defaulted on the debt, URS, a fully licensed debt collector in the state of Illinois, attempted to collect the $94 debt on behalf of Advocate Medical Center. (Dkt. 49 at ¶¶ 4, 8; Dkt. 57 at ¶¶ 2, 7). As part of its collection efforts, URS sent Plaintiff a collection later dated April 20, 2016, stating in relevant part:

> Dear FRANK,
>
> Please receive and accept this letter in the spirit in which it is intended. We do not seek to create a climate of argument and threat but merely to state our position in as factual a manner as possible. Our client claims a debt is due and owing from you; they have attempted to resolve this between them and you with no success. Our office has been brought into the picture and we have done everything we can think of to convince you to pay this claim; our file indicates that you have the means to pay but that you will not pay.
>
> We wish to make this appeal to you as one reasonable party to another. Send us your full payment today or contact this office at once to make suitable payment arrangements so that no further procedures need to be taken in this matter.
>
> **This is our third attempt to have you voluntarily resolve this claim. We seek your cooperation now!** . . .

(Dkt. 49 at ¶ 11; Dkt. 57 at ¶11) (emphasis in original). Plaintiff claims that after reading the April 20 letter, he believed URS intended to sue him for the alleged debt. (Dkt. 49 at ¶ 13).

At the time the April 20 letter was sent, neither URS nor Advocate Medical Group intended to sue Plaintiff for the $94 debt. (Dkt. 49 at ¶¶ 14-15). The only procedures URS uses to collect debts are phone calls and collection letters. (Dkt. 49 at ¶ 12). URS did not make any phone calls or send any collection letters to Plaintiff after April 20, 2016. (Dkt. 60 at ¶¶ 1-2).

2

## **STANDARD OF REVIEW**

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts properly grant summary judgment where "no reasonable jury could rule in favor of the nonmoving party." *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 (7th Cir. 2016) (internal citation omitted). Courts do not weigh the evidence or make credibility determinations when deciding motions for summary judgment. *See Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). Rather, the Court must "construe all factual disputes and draw all reasonable inferences in favor of [] the non-moving party." *Cole v. Bd. of Trustees of N. Ill. Univ.*, 838 F.3d 888, 895 (7th Cir. 2016), *cert. denied*, 137 S.Ct. 1614 (2017). When there are cross-motions, the Court "construe[s] the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526–27 (7th Cir. 2005). "A factual dispute is genuine only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (internal quotation omitted).

The initial burden is on the moving party to inform the district court why a trial is not necessary. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). This burden "may be discharged by 'showing'—that is, point[ing] out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Upon such a showing, the nonmoving party must 'make a showing sufficient to establish the existence of an element essential to that party's case.'" *Id.* (quoting *Celotex*, 477 U.S. at 322.) In other words, summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its

version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (internal quotations omitted).

## DISCUSSION

Bandas alleges that URS's April 20th collection letter deceptively threatened him with litigation when it had no intention of actually suing him for the $94 debt, in violation of § 1692e of the FDCPA. (Dkt. 1 at ¶¶ 20-28, 36; Dkt. 48 at 2). Section 1692e of the FDCPA prohibits debt collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt" and provides a non-exhaustive list of conduct constituting a violation of this general prohibition. 15 U.S.C. § 1692e. Bandas alleges that URS's letter violates §§ 1692e(5) and 1692e(10) of that list, which prohibit:

> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

*Id.* The parties do not dispute that URS is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692e(6), that the $94 constituted a "debt" as defined by the FDCPA, *id.* at § 1692e(5), or that the letter was sent in connection with the collection of that debt. (*See* Dkt. 55 at ¶¶ 3, 6; Dkt. 57 at ¶¶ 5, 12). The parties dispute only whether the letter made "false, deceptive or misleading representations."

URS admits that it had no intention to sue Bandas over the debt. Thus, if the letter does constitute a threat of litigation, that threat would be false. But to succeed on his claim, Plaintiff must do more than prove that the letter contains a *false* representation. A representation that is technically false does not in itself constitute a violation of § 1962e; the plaintiff must show not only that statement is false but also that it would mislead an "unsophisticated consumer." *See Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) (citing *Wahl v. Midland Credit Mgmt.*, 556 F.3d

4

643, 645–46 (7th Cir.2009)). The question, therefore, is whether an unsophisticated consumer reading the letter would believe that URS intended to sue him.

The unsophisticated consumer is "uninformed, naïve, [and] trusting, but is not a dimwit, has rudimentary knowledge about the financial world, and is capable of making basic logical deductions and inferences." *Id.* (internal quotations omitted). Additionally, the unsophisticated consumer "may tend to read collection letters literally" but "does not interpret them in a bizarre or idiosyncratic fashion." *Gruber v. Creditors' Prot. Serv., Inc.*, 742 F.3d 271, 274 (7th Cir. 2014) (quoting *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)). This standard is more demanding than the "least significant consumer" standard used in other circuits and rejected by the Seventh Circuit in that, under the "unsophisticated consumer" standard, a plaintiff must show that the representation would be confusing to a "significant fraction of the population." *Id.* (quoting *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574 (7th Cir.2004)); *see also Gruber*, 742 F.3d at 274; *Zemeckis v. Glob. Credit Collection Corp.*, 679 F.3d 632, 635 (7th Cir. 2012).

Whether the representation is confusing to a significant fraction of the population is a question of fact. *See id.; see also McMillan v. Collection Professionals Inc.*, 455 F.3d 754, 760 (7th Cir. 2006). Section 1692e cases fall into three categories: (1) "cases involving statements that plainly, on their face, are not misleading or deceptive," in which courts grant summary judgment in favor of defendants, (2) "cases involve[ing] statements that are not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer," in which "plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive," and (3) "[c]ases involving plainly deceptive communications" that are "clearly misleading on their

5

face," in which plaintiff need not present any extrinsic evidence to prevail. *Ruth v. Triumph Partnerships*, 577 F.3d 790, 800 (7th Cir. 2009). Extrinsic evidence is required in all but the clearest of cases because "judge are not experts in the knowledge and understanding of unsophisticated consumers facing demands by debt collectors" and "are no more entitled to rely on [their] intuitions in this context than [they] are in deciding issues of consumer confusion in trademark cases." *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007); *see also Taylor*, 365 F.3d at 575 ("A judge might be mistaken in supposing that a letter that was clear to him was clear to unsophisticated debtors . . . so it is open to a plaintiff, in any but the clearest case, to present objective evidence of confusion, for example the results of a consumer survey."). Lastly, in addition to showing that the statement is false and is misleading on its face, Plaintiff must demonstrate that the language in the letter is a "*materially* false statement," meaning "it has 'the ability to influence a *consumer's* decision.'" *Lox*, 689 F.3d at 822 (quoting *O'Rourke v. Palisades Acquisition VXI, LLC*, 635 F.3d 938, 942 (7th Cir. 2011)) (emphasis in original); *see also Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 628 (7th Cir. 2009) ("The purpose of the [FDCPA] is to protect consumers, and they don't need protection against false statements that are immaterial in the sense that they would not influence a consumer's decision . . ."); *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 758 (7th Cir. 2009) ("A statement cannot mislead unless it is material, so a false but non-material statement is not actionable.").

Bandas argues he is entitled to summary judgment because the letter "fits squarely within the third category of cases" and is deceptive on its face by falsely threatening litigation that URS did not intend to pursue. (Dkt. 48 at 2, 9). He offers no extrinsic evidence and makes no alternative argument under the second category. Therefore, Bandas must prove that the statement is plainly and clearly misleading on its face to an unsophisticated consumer in order to prevail. *Lox*, 689

6

F.3d at 822 ("[Since] Lox did not present any extrinsic evidence at the summary judgment stage, he must show that the statement is plainly and clearly misleading on its face, thus eliminating any need for evidence of its deceptive nature."). URS seeks summary judgment in its favor on the grounds that Bandas has failed to do so. (Dkt. 56 at 3).

Plaintiff argues the letter "is plainly deceptive and misleading because it falsely threatens litigation that URS does not intend to prosecute." (Dkt. 48 at 9). Plaintiff points to this Court's statement in its Order on Defendant's Motion to Dismiss that, "[ta]ken as a whole, an unsophisticated consumer could reasonably believe that 'further proceedings' in URS's letter constitute a threat of litigation . . ." (Dkt. 48 at 9 (citing Dkt. 33 at 7)). As Defendants correctly note, however, the April 20 letter uses the phrase "further *procedures*" and not "further proceedings." (*See* Dkt. 49 at ¶ 11 (emphasis added)). But more importantly, this Court applies a different standard at the motion to dismiss stage than it does here. Here, a finding that an unsophisticated consumer "could reasonably believe" that the letter threatened litigation is insufficient; the threat must be plain on its face.

"[Courts] frequently look to dictionaries to determine the plain meaning of words" when interpreting statutes. *Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000). It is reasonable to do the same when interpreting the plain meaning of language as an unsophisticated consumer would understand it. *See, e.g., Wahl*, 556 F.3d at 646 (considering definition provided in the American Heritage Dictionary to determine the meaning of "principal" in deciding FDCPA claim). In fact, it is more likely an unsophisticated consumer would seek clarification from more readily available online resources such as Google or Wikipedia, if any. *See, e.g., McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1021 (7th Cir. 2014) (recognizing in FDCPA case that "[i]f a consumer received an 'offer for settlement' and searched on Google to see what is meant by

'settlement,' she might find the Wikipedia entry for 'settlement offer'"); *Holt v. LVNV Funding, LLC*, 147 F. Supp. 3d 756, 761 (S.D. Ind. 2015) (considering Google definition of "liability" after expressing skepticism as to whether an unsophisticated consumer would look to the Cambridge English Dictionary for clarity) (citing *McMahon*, 744 F.3d at 1021). If an unsophisticated consumer conducted a Google search for "procedure," the top three definitions provided would be: (1) "an established or official way of doing something," (2) "a series of actions conducted in a certain order or manner" and (3) "a surgical operation." The online Merriam-Webster dictionary defines "procedure" similarly as "a particular way of accomplishing something or of acting," "a series of steps followed in a regular or definite order," and "a traditional or established way of doing things." *See* https://www.merriam-webster.com/dictionary/procedure. Nothing in these definitions would suggest to an unsophisticated consume that "further procedures" necessarily means litigation.

Plaintiff asserts next that when read together with the statements in the letter that URS has "done everything we can think of to convince you to pay this claim" and that this was the "third attempt to have you voluntarily resolve this claim" (Dkt. 49 at ¶ 11), "there can be no other conclusion [than] that 'further procedures' constitute a threat of litigation, all other avenues of collection having been exhausted." (Dkt. 48 at 9). But Plaintiff offers no support for his conclusion that an unsophisticated consumer would automatically assume litigation is the *only* "further procedure" available to URS. For example, an unsophisticated consumer may believe after reading the letter that URS's next step would be to send more letters; the letter certainly does not state that it is the *last* or *final* letter URS will send, only that it is the third. The unsophisticated consumer also may believe URS will begin calling him on the phone. The point is that nothing in the letter plainly suggests one, certain and solitary meaning of the phrase "further procedures."

8

Additionally, the letter is not sent from an attorney, does not explicitly mention litigation and does not mention in any way lawsuits, legal proceedings, complaints, court, judgments, attorneys or any other term associated with litigation. In fact, the letter disclaims any threat whatsoever at the outset stating: "Please receive and accept this letter in the spirit in which it is intended. *We do not seek to create a climate of argument and threat* but merely to state our position in as factual a manner as possible." (Dkt. 49 at ¶ 11 (emphasis added)).

Moreover, "courts have found that for a collection notice impermissibly to threaten legal action, it must falsely 'communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made.'" *Combs. v. Direct Mktg. Credit Servs., Inc.*, 165 F.3d 31 (7th Cir. 1998) (unpublished order) (quoting *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1136 (N.D. Ill. 1998)). Therefore, even if an unsophisticated consumer interpreted the letter as making even an "indirect" or "oblique" threat of litigation, the letter must "indicate that legal action is underway or contemplated in the near future" to give rise to liability. *Id.* (internal quotation omitted) (interpreting warning that "[t]his is your opportunity to resolve this matter amicably," and "[w]e advise you to consult with your attorney regarding your liability" as "simply 'moderate communications' that make neither express nor implied threats of current or imminent litigation"); *see also, e.g., Jenkins*, 999 F. Supp. at 1137–38 (finding as a matter of law that the letter lacked imminence and, therefore, did not impermissibly threaten litigation where "paragraph discussing litigation [wa]s phrased in hypothetical terms, such as 'if legal action were taken' and 'should such court action occur'" and "letter open[e]d by disavowing any current or imminent legal action"); *Aker v. Bureaus Inv. Grp. Portfolio No. 15 LLC*, No. 12 C 03633, 2014 WL 4815366, at *5 (N.D. Ill. Sept. 29, 2014) (finding as a matter of law that "references to taking 'such action as necessary to protect [] client' and to 'consider[ing] additional remedies' at

9

unspecified times" are vague and do not constitute a threat of litigation, particularly where "there is no reference whatsoever to courts, lawsuits, judgments, pleadings, damages, attorneys' fees, or any trappings of litigation"); *c.f. Florence v. Nat'l Sys.*, 1983 U.S. Dist. Lexis 20344, *10–11 (letter stating that "an attorney is at present filing in federal court in an attempt to litigate this matter" and "[a]s of this point, if we do not hear from you within two -2- business days we will commence litigation" was clearly prohibited under Section 1692e).[1] Here, there is no threat or even mention of litigation, much less a threat of *imminent* litigation. Plaintiff focuses on the terms "today," "at once" and "now!" used in the letter but these terms are not in themselves prohibited. Debt collectors are permitted to use an urgent tone in attempting to collect the debt as quickly as possible. *See Taylor*, 365 F.3d at 575–76 (debt collectors are allowed to use "puffery" or "rhetoric designed to create a mood rather than to convey concrete information or misinformation . . . as it is perfectly obvious to even the dimmest debtor that the debt collector would very much like him to pay the amount demanded straight off, sparing the debt collector any further expense.").

Plaintiff cites to a handful of non-precedential district court opinions finding generally that a letter from a creditor to a debtor that falsely communicates that the creditor will take an action that it cannot legally take nor has the intention to take violates § 1962e of the FDCPA. (*See* Dkt. 48 at 2). Plaintiff primarily relies on *Lee v. CBC Company*, in which a district court analyzed three letters sent by a debt collector to the plaintiff: the first stating, "[W]e request that you send the total balance within 72 hours. If this account is not paid in full, we will proceed with collection . . .,"

---

[1] *See also, e.g., Blanchard v. N. Am. Credit Servs.*, No. 15-1295-DRH, 2016 WL 1408592, at *3 (S.D. Ill. Apr. 11, 2016) (finding on motion to dismiss that "[o]ffering a consumer 'the chance to pay what you owe voluntarily' at most communicates that a lawsuit is 'merely a possibility,' and certainly does not imply any legal proceedings have been or will be initiated"); *Ruiz v. Midland Credit Mgmt., Inc.*, No. 2:11-CV-32, 2012 WL 33016, at *3 (N.D. Ind. Jan. 6, 2012) (finding on motion for judgment on the pleadings that language in letter stating that defendant was "considering forwarding this account to an attorney in your state for possible litigation" and if plaintiff did not respond, "may proceed with forwarding this account to an attorney" "would not make an unsophisticated consumer believe that a decision to pursue legal action is either imminent or has already been made").

*id.* at *9–10; the second stating, "THE BALANCE IS DUE IN FULL AND MUST BE PAID TODAY" and "if you continue to ignore our collection efforts, we may be forced to pursue more formal collection action," *id.* at *16; and the third stating, "unless we hear from you, or receive the full payment from you IMMEDIATELY, additional actions, which might include LEGAL ACTION, will be taken to resolve this situation." *Id.* at *16. The district court held that the first and third letters created a false sense of urgency in violation of § 1692e(10) because they set a 72-hour deadline and indicated immediate action was forthcoming, respectively but that the second did not because it threatened only that Defendant *may* pursue more formal collection efforts. *Id.* at *14–16. The district court also considered whether the second and third letters falsely threatened immediate legal action in violation of § 1692e(5). *Id.* at *19. It found that there was a genuine issue of material fact as to whether the third letter did because, although it clearly indicated some action would be immediately forthcoming, it stated only that the action "might" include legal action. *Id.* However, the Court found that the second letter did *not* constitute a threat of immediate legal action because "[a]ssuming for the sake of argument that the least sophisticated consumer might interpret 'more formal collection action' to mean legal action, the letter nevertheless uses the work 'may' which does not connote a threat of immediate action." *Id.* Plaintiff argues the letter he received is more like the first and third letters in *Lee* than the second. The Court disagrees. As an initial matter, *Lee* is distinguishable because the district court used the "least sophisticate consumer" standard, which does not apply here. Regardless, while it is true that the April 20 letter uses words suggesting immediate action may be taken, *e.g.* "now" and "at once," there is no explicit threat of litigation or, as already discussed above, any indication that the "further procedures" that may immediately occur include litigation.

Plaintiff also relies on *Pantoja v. Portfolio Recovery Associates, LLC* to argue that the language in the letter violates the FDCPA because it is *designed* to deceive an unsophisticated consumer. 852 F.3d 679 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 736 (2018); (*see* Dkt. 49 at 11). In *Pantoja*, the defendant debt collector sent the plaintiff a dunning letter attempting to collect an old debt long after the statute of limitations had run. *Id.* The letter offered to settle the debt for a low down payment and stated, "[b]ecause of the age of your debt, we will not sue you for it." *Id.* at 682. The district court found that the letter violated § 1692e on two grounds: (1) because it failed to warn the debtor that if he accepted the settlement offer and made partial payment he would restart the clock and lose the protection of the statute of limitations[2] and (2) because the letter deceptively stated that the debt collector had chosen not to sue rather than saying that it was legally barred from doing so. *Id.* at 682–83. The Seventh Circuit affirmed the judgment on both, independent grounds. With regard to the latter, the Seventh Circuit found that although the language in the letter was ambiguous as to whether the debt was legally enforceable, the ambiguity was "careful and deliberate" and the "carefully crafted language, chosen to obscure from the debtor that the law prohibits the collector from suing to collect this debt or even threatening to do so, is the sort of misleading tactic the FDCPA prohibits." *Id.* at 687. Importantly, the debt collector selected the language used in its letter from a consent decree between the Federal Trade Commission and another debt collector, which required collection letters to say the following when the debt collector knew the statute of limitations had expired: "The law limits how long you can be sued on a debt. Because of the age or your debt, we will not sue you for it." *Id.* at 686 (citing *McMahon v. LVNV Funding, LLC*, 2012 WL 2597933, at \*2 (N.D. Ill. July 5, 2012), *rev'd on*

---

[2] The FDCPA prohibits debt collectors from suing to collect consumer debt after the statute of limitations has run. *See id.* at \*3.

*other grounds*, 744 F.3d 1010 (7th Cir. 2014)). The *Pantoja* court found that by opting to include only the second, "vaguer" sentence of the consent decree language, the debt collector carefully and deliberately obscured its reasons for not suing the debtor in order to mislead the debtor into believing he could be sued for the debt. *Id.* at 687. Here, there is no similar evidence that URS deliberately crafted the language in its letter to mislead Plaintiff, only Plaintiff's allegations that he did so. There is also no statute of limitations issue or any mention of a lawsuit. Thus, *Pantoja* is not helpful to Plaintiff's claim.[3]

Plaintiff argues also that there is no genuine issue of material fact that the letter would mislead an unsophisticated consumer because "*Plaintiff*"—an unsophisticated consumer—"was harmed by the URS' actions because the false threat of litigation was intended to mislead Plaintiff into believing that if he did pay the alleged debt that URS would sue him." (Dkt. 48 at 10) (emphasis added). Of course, the question is not merely whether the letter *intended* to mislead an unsophisticated consumer but whether it would in fact do so. Regardless, Plaintiff cannot rely on his subjective interpretation of the letter alone to prevail. "[T]he unsophisticated consumer test is an objective one, meaning that it is unimportant whether the individual that actually received a violative letter was misled or deceived." *Lox*, 689 F.3d at 826 (internal quotations omitted). Therefore, "a plaintiff cannot withstand summary judgment just by presenting his affidavit that *he* was confused." *Evory*, 505 F.3d at 774 (emphasis in original). "He must show that he is

---

[3] The other cases Plaintiff cites in his briefs are not only non-precedential but also distinguishable, for example, because they are not summary judgment opinions, *see, e.g., Cuenca v. Harris & Harris, Ltd.*, No. 16-CV-05385, 2017 WL 1196922, at *3 (N.D. Ill. Mar. 31, 2017) (recognizing in order on motion to dismiss that the determination as to whether language in dunning letter was in fact misleading was a factual question to be addressed at a later stage), or because they addressed whether an (undisputed) demand for immediate action was misleading because it contradicted another portion of the letter and not whether the language in the letter constituted a false threat of litigation. *See, e.g., Vaughn v. CSC Credit Servs., Inc.*, No. 93 C 4151, 1995 WL 51402, at *3 (N.D. Ill. Feb. 3, 1995) (finding dunning letter deceptive because "only reasonable interpretation" by unsophisticated consumer was that demand for immediate action contradicted validation notice); *Creighton v. Emporia Credit Serv., Inc.*, 981 F. Supp. 411, 415 (E.D. Va. 1997) (applying the "least sophisticated consumer" standard and finding dunning letter deceptive because demand for immediate action contradicted validation notice).

representative of the protected group." *Id.* (citing *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 948 (7th Cir. 2004)).

Finally, Plaintiff argues that the letter is plainly deceptive and misleading "because there are only two possible interpretations . . . and both violate [the FDCPA]." (Dkt. 59 at 3). Specifically, Plaintiff argues that "further procedures" can be interpreted only two ways: either to falsely threaten more phone calls and letters or to falsely threaten litigation. (*Id.* at 3–4). According to Plaintiff, this is because the only procedures URS uses to collect debts are phone calls and collection letters (*see* Dkt. 49 at ¶ 12) and if URS had "done everything [it] can think of" as the letter states, the only "procedures" left to take were legal actions. (Dkt. 59 at 3). Therefore, the first interpretation is false because URS did not intend to send more calls and letters and the second is false because, as URS admits, it had no intention of suing Plaintiff over the $94 debt. (*Id.* at ¶ 14).

Any assertion that the letter could be interpreted in more than one way entirely undermines Plaintiff's position that it "plainly and clearly on its face" threatens litigation. *C.f. Lox*, 689 F.3d at 829 (finding statement misleading on its face whether there was "*only one* reasonable interpretation": that attorneys fees are a possible outcome of a lawsuit) (emphasis added); *Ruth*, 577 F.3d at 801–02 (finding statement plainly misleading on its face where "*the only* reasonable conclusion" that an unsophisticated consumer could reach was that defendants intended to disclose consumer's nonpublic information without permission when in fact they were legally prohibited from doing so) (emphasis added). The fact that *any* other reasonable interpretation exists raises questions as to whether an unsophisticated consumer would find that the letter threatens litigation. In other words, while the language in the letter *might possibly* mislead an unsophisticated consumer that he or she would be sued, it is not "plainly and clearly misleading on its face"

14

meaning Plaintiff's claim falls at best under the second category of § 1692e claims and Plaintiff "may prevail only by producing extrinsic evidence." *See Ruth*, 577 F.3d at 800. Plaintiff admits that he has not done so.

The Court notes also that this final argument raises an alternative theory of FDCPA violation—that URS made a false and misleading representation that it would make more calls and send more letters—for the first time in Plaintiff's Response to Defendant's Motion for Summary Judgment. (*See* Dkt. 57 at 4–5). The Court declines to consider this theory. "A plaintiff cannot add additional claims through arguments made in opposing summary judgment." *Messner v. Calderone*, 407 F. App'x 972, 974 (7th Cir. 2011) (citing *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 412 (7th Cir.2009) and *Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004)). Of course, a plaintiff may "refine and develop his legal and factual theories based on the record that emerges in discovery." *See, e.g., Kostovetsky v. Ambit Energy Holdings, LLC*, 242 F. Supp. 3d 708, 719 (N.D. Ill. 2017) (citing *CMFG Life Ins. Co. v. RBS Sec., Inc.*, 799 F.3d 729, 743 (7th Cir. 2015)). For example, in *CMFG Life Insurance*, the plaintiff, a purchaser of defective mortgage-backed securities, sued the defendant-underwriter for rescission alleging the defendant made a material misrepresentation that the underlying loans complied with underwriting guidelines. 799 F.3d at 734–35. At summary judgment the plaintiff argued that the defendant made two types of misrepresentations: written and oral; defendant argued in response that the plaintiff improperly raised the oral-misrepresentation theory for the first time at summary judgment. *Id.* at 739, 743. The Seventh Circuit sided with the plaintiff, finding that Defendant plaintiff was "entitled to refine its rescission theory at summary judgment based on evidence produced in discovery" and the oral representations were "simply another factual basis for recession based on misrepresentation of guidelines compliance." *Id.* at 743. Here, however, Plaintiff offers no support for his new theory

15

that the language in the letter threatened more calls and letters and nothing in the parties' briefs suggests this new theory was ever explored in discovery. *C.f. Custom Companies, Inc. v. N. River Ins. Co.*, No. 11 C 8367, 2013 WL 441170, at *4-5 (N.D. Ill. Feb. 5, 2013) ("[S]ufficient discussion regarding the [new theory] occurred during discovery such that [defendant] should have been put on notice that [plaintiff] could be seeking coverage under the [new theory]."). Therefore, Plaintiff has not "merely add[ed] detail with the aid of discovery" or "plac[ed] meat on the bones" of the claim alleged in his Complaint, *Kostovetsky*, 242 F. Supp. 3d at 719, but rather attempts to inject an alternative basis of liability not present in his Complaint after discovery has closed. *See Trade Fin. Partners, LLC*, 573 F.3d at 412 ("After lengthy discovery, raising an alternative basis for its breach of contract claim in its sur-reply was inadequate."); *Messner*, 407 F. App'x at 974 (court properly refused to consider alternative theory where it "[could] not find any semblance" of the claim in the complaint and plaintiff's counsel never litigated the theory before raising it for the first time in opposition to summary judgment).

Even if the Court were to consider whether a threat of more phone calls and letters violated the FDCPA, Plaintiff fails to show that such a threat was false. Plaintiff assumes that because URS did not make any calls or send any letters to Plaintiff after April 20, URS did not *intend* to so. But Plaintiff has no support for its assumption. Because this claim was raised for the first time in Plaintiff's responsive briefing, neither party has taken a position in its Rule 56 statements as to whether URS intended to make more phone calls or send more letters at the time it issued the letter to Plaintiff—perhaps because neither party conducted any discovery on the issue. Rather, if URS intended to take *any* action after the letter, it is reasonable to infer it would have been to make calls or send letters since it is undisputed those are the only procedures URS uses to collect debts.

Therefore, Plaintiff fails to show such threat is false. Plaintiff also fails to argue must less show that such threat, if false, is material in that it would influence a consumer's decision to pay a bill.

Ultimately, Plaintiff fails to show the letter plainly and clearly on its face threatens litigation. Absent such a showing, Plaintiff may only prevail at summary judgment if he presents extrinsic evidence demonstrating that a significant portion of the population would interpret the language in the letter to threaten litigation. Plaintiff provides none. The Court is not permitted at this stage to stand in the shoes of the unsophisticated consumer and rely on its own instincts to make such determination. Therefore, the Court grants summary judgment on Plaintiff's FDCPA claim in favor of Defendant and against Plaintiff.

## CONCLUSION

For the reasons stated above, the Court denies Plaintiff's Motion for Summary Judgment (Dkt. 47) and grants Defendant's Motion for Summary Judgment (Dkt. 50).

_____
Hon. Virginia M. Kendall
United States District Judge

Date: September 7, 2018